Edgar MORALES, Plaintiff,

v.

Brian FISCHER, Commissioner, Department of Corrections and Community Supervision; Carl J. Koenigsmann, M.D., Dep. Commr./Chief Medical Officer, Department of Corrections and Community Supervision; Dale Artus, Superintendent, Wende Correctional Facility; Roslyn Killinger, Deputy Supt. of Facility Health Services, Wende Correctional Facility; Jacqueline Levitt, M.D., Facility Health Services Director, Wende Correctional Facility; and Hope Obertean, Nurse Practitioner, Wende Correctional Facility, sued in their individual and official capacities, Defendants.

No. 13–CV–6134 EAW.

United States District Court, W.D. New York.

Signed Sept. 22, 2014.

Edgar Morales, Alden, NY, pro se.

Bernard F. Sheehan, Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### I. INTRODUCTION

Plaintiff Edgar Morales ("Plaintiff"), appearing *pro se*, commenced this action under 42 U.S.C. § 1983. (Dkt. 1). Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that his constitutional rights have been violated during his confinement at Wende Correctional Facility ("Wende"). Defendants, each an employee of DOCCS during the relevant time, have moved to dismiss Plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. (Dkt. 10).

Plaintiff asserts a claim against Defendants under the Eighth and Fourteenth Amendments to the United States Constitution, alleging that Defendants have failed to provide him with adequate treatment for his liver and abdomen pain.[1] The record shows, however, that Plaintiff has received medical treatment for his complaints, and there is no evidence that, to the extent that the individual Defendants have had any personal involvement in Plaintiff's treatment, their decisions in that regard have been based on anything other than their appropriate and professional medical judgment. As a result, summary judgment is warranted in favor of Defendants.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently confined at Wende, and was so confined during the relevant time period. (Dkt. 1 at ¶ 3).

During the relevant time period, Brian Fischer was the Commissioner of DOCCS; Carl J. Koenigsmann was the Deputy Commissioner and Chief Medical Officer of DOCCS; Dale Artus was the Superintendent of Wende; Roslyn Killinger was the Deputy Superintendent for Health Services at Wende; and Hope Obertean was a Nurse Practitioner at Wende. (Dkt. 10-3 at 1-2). Defendant Jacqueline Levitt is a medical doctor licensed to practice medicine in New York State. (Dkt. 10-4 at ¶¶ 1-3). Dr. Levitt is employed as a doctor for DOCCS, and was assigned to the Wende facility during the relevant time period. (*Id.* at ¶¶ 3-4).

While incarcerated at Riker's Island under the alias Edwardo Gonzales, Plaintiff was treated with the medication chemoprophylaxis for approximately one month in late 2009, after Plaintiff tested positive for tuberculosis. (Dkt. 10-4 at ¶ 8; Dkt. 12 at 3-5). In January 2010, Plaintiff, then using his current alias Edgar Morales, tested positive for tuberculosis while housed at Downstate Correctional Facility. (Dkt. 1 at ¶ 18; Dkt. 10-4 at ¶ 9; Dkt. 12 at 7, 9). A skin test registering over 5 mm indicates that treatment is necessary in a prison situation. (Dkt. 10-4 at ¶ 13). Plaintiff's skin test registered positive for tuberculosis at 20 mm. (*Id.* at ¶ 13). Accordingly, prison officials resumed Plaintiff's chemoprophylaxis treatment on January 15, 2010. (Dkt. 10-4 at ¶ 14; Dkt. 12 at 9, 11).

Plaintiff was transferred to Wende on February 8, 2010. (Dkt. 10-4 at ¶ 16). At some time thereafter, Plaintiff alleges he was prescribed the medications Sucralfate, Docusate Sodium, and Omeprazole. (Dkt. 1 at ¶ 19). Plaintiff claims that within seven days of starting the medications, he began experiencing "extreme pain and discomfort in his abdomen." (*Id.* at ¶ 20). On February 23, 2010, Plaintiff began to complain of "indigestion." (Dkt. 10-4 at ¶ 17; Dkt. 12 at 29-45). Over time, Plaintiff complained of, *inter alia*, right-sided abdominal pain, left-sided abdominal pain,

---

**1.** Plaintiff states that he is seeking relief for violations of his First and Eighth Amendment rights within his complaint. (Dkt. 1 at ¶ 34(a)(1)). However, Plaintiff clearly states at the outset of his complaint that he seeks relief for alleged violations of his Eighth and Fourteenth Amendment rights. (*Id.* at ¶ 1). Further, Plaintiff only alleges facts concerning an Eighth Amendment claim. To state a claim for retaliation in violation of the First Amendment, a plaintiff must allege that "con-

stitutionally protected conduct was a substantial or motivating factor for a prison official's adverse action." *Victor v. Milicevic,* 361 Fed. Appx. 212, 215 (2d Cir.2010) (citing *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003)). Here, Plaintiff has not alleged that he received inadequate medical treatment in retaliation for a protected activity. Therefore, the Court considers only Plaintiff's Eighth Amendment claim as applied to the states through the Fourteenth Amendment.

food intolerance, and difficulty swallowing. (Dkt. 10–4 at ¶ 19; Dkt. 12 at 29–45).

During one appointment with Plaintiff's primary care provider Dr. Levitt, Plaintiff claims that he informed Dr. Levitt of "chronic and severe discomfort on the right side of his abdomen, sharp pains in his liver, as well as heartburn and nausea," after which Dr. Levitt gave Plaintiff medication for an upset stomach and placed Plaintiff on a controlled diet. (Dkt. 1 at ¶ 21).

According to Plaintiff, between August 20, 2010, and February 22, 2011, he reported to Emergency Sick–Call at least 39 times to complain of liver and abdomen pain, only to be told to continue on his medications. (Id. at ¶ 22). Plaintiff claims that he was admitted to the facility infirmary on at least two occasions because his pain had "become disabling." (Id.).

Over the course of three and a half years, Plaintiff was seen by six different medical providers. (Dkt. 10–4 at ¶ 18). Plaintiff was also examined by two gastroenterologist consultants on three separate consultations. (Dkt. 10–4 at ¶ 20; Dkt. 12 at 17, 23, 27). These consultants reported no significant findings or recommendations for further testing. (Dkt. 10–4 at ¶ 20; Dkt. 12 at 17, 23, 27). All liver function tests were within normal limits. (Dkt. 10–4 at ¶ 21).

Plaintiff received an upper endoscopy, a colonoscopy, and abdominal x-rays that were all negative for any condition that would produce Plaintiff's complaints. (Dkt. 10–4 at ¶ 22; Dkt. 12 at 15, 19, 25).

In March 2012, Plaintiff claims he wrote Defendant Koenigsmann to request a liver biopsy. (Dkt. 1 at ¶ 23). Plaintiff alleges that Defendant Koenigsmann declined Plaintiff's request in a letter dated April 19, 2012, stating that a liver biopsy was not medically necessary. (Id. at ¶ 24). Ac-

cording to Plaintiff, he has filed numerous complaints and letters with Defendants Fischer, Koenigsmann, Artus, and Killinger. (Id. at ¶ 25).

Plaintiff is particularly concerned with a treatment note from September 2, 2010, associated with Plaintiff's abdominal ultrasound. (Dkt. 10–4; Dkt. 12 at 13). The note suggested a "[c]oarse appearing liver which may indicate cirrhotic change." (Dkt. 12 at 13). That ultrasound was performed using a portable machine at the Wende facility. (Dkt. 10–4 at ¶ 23). On November 23, 2010, Plaintiff received a follow-up ultrasound at Erie County Medical Center. (Dkt. 10–4 at ¶ 24; Dkt. 12 at 21). The November 2010 ultrasound was "entirely normal, with no suggestion of cirrhosis." (Dkt. 10–4 at ¶ 25; Dkt. 12 at 21). However, the November 2010 report notes a history of "+PPD recently treated, U.S. with cirrhosis of liver." (Dkt. 20 at 15). Plaintiff argues that this note indicates that he has cirrhosis of the liver. (Id. at 4). Defendants explain that the report notes an ultrasound with a history of cirrhosis, but the fact that the November 2010 ultrasound and subsequent tests showed that Plaintiff's liver is unremarkable means that Plaintiff does not have cirrhosis of the liver. (Dkt. 19–1 at ¶¶ 26–39). Additionally, Defendants note that Plaintiff had an abdominal and pelvic CT examination on August 24, 2013, that confirmed Plaintiff does not have liver damage. (Dkt. 19–1 at ¶¶ 38, 53; Dkt. 20 at 7).

Plaintiff claims that he now suffers from "cirrhosis of [the] liver" as a result of the medication received following his positive tuberculosis test. (Dkt. 20 at 4). Plaintiff contests the diagnosis of tuberculosis and claims that he received medication that he did not need, which caused him to experience medical issues and pain. (Dkt. 1 at ¶ 31). Defendants argue that they have conducted multiple examinations and labo-

ratory tests and have found no evidence of liver disease. (Dkt. 10–4 at ¶ 6). Medical professionals at Wende have not performed a liver biopsy due to the negative test and laboratory results. (*Id.* at ¶ 27). Further, Defendants claim that "[a] biopsy is an invasive procedure and has potentially dangerous side effects." (*Id.* at ¶ 28). Plaintiff continues to request further tests to confirm that he does not have cirrhosis of the liver. (Dkt. 20 at 4).

According to Plaintiff, Dr. Levitt informed Plaintiff that his problems were mental and referred him to be evaluated by the mental health staff at Wende. (Dkt. 1 at ¶ 26). When Plaintiff filed a grievance concerning his referral to mental health, Plaintiff alleges that Defendant Artus denied any staff calling Plaintiff "crazy." (*Id.*). Plaintiff has been referred to the Mental Health unit to determine if Plaintiff's continued symptoms could be explained by non-physical causes. (Dkt. 10–4 at ¶ 29). However, according to Defendants, evaluation of Plaintiff's symptoms did not yield any positive findings. (*Id.* at ¶ 29). Defendants deny calling Plaintiff "crazy." (*Id.* at ¶ 30).

Plaintiff claims that he has been denied adequate medical treatment because he has not been provided a Spanish interpreter for every medical appointment. (Dkt. 1 at ¶ 25). Specifically, Plaintiff claims that he was denied an interpreter at one April 12, 2011, appointment with Defendant Obertean. (*Id.*). According to Defendants, Plaintiff has been provided with an interpreter for every medical appointment, and his appointment with Defendant Obertean was rescheduled for an interpreter. (Dkt. 10–4 at ¶ 31–32; Dkt. 12 at 29–45).

Plaintiff alleges that Defendants "have displayed medical malpractice and deliberate indifference to the Plaintiff's serious medical needs." (Dkt. 1 at ¶ 12). Plaintiff filed his complaint on March 13, 2013.

(Dkt. 1). On May 7, 2013, this Court granted Plaintiff motion to proceed *in forma pauperis.* (Dkt. 7). Presently before the Court is Defendants' motion to dismiss and/or for summary judgment, filed August 28, 2013. (Dkt. 10).

## III. DISCUSSION

### A. Standard of Law—Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.'* " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence *of some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed.R.Civ.P. 56(b).

" '[C]aution should be exercised in granting summary judgment when the non-moving party lacks relevant discovery....' " *Munoz v. Monpetit*, No. 9:11–CV–0111 (DNH/TWD), 2013 WL 1414933, at *1 n. 1, 2013 U.S. Dist. LEXIS 51000, at *1 n. 1 (N.D.N.Y. Feb. 28, 2013) (quoting *Aniero Concrete Co. v. New York City Constr. Auth.*, No. 94 Civ. 9111, 1997 WL 3268, at *5, 1997 U.S. Dist. LEXIS 22, at *17 (S.D.N.Y. Jan. 3, 1997)). However, "[t]he mere fact that no formal discovery has taken place does not preclude the filing of a motion under Rule 56." *Burke v. State Univ. of N.Y.*, No. 3:12–cv–1013, 2012 WL 5986548, at *4, 2012 U.S. Dist. LEXIS 169160, at *11–12 (N.D.N.Y. Nov. 29, 2012); *see also Munoz*, 2013 WL 1414933, at *1, 2013 U.S. Dist. LEXIS 51000, at *2 (granting defendants' pre-answer motion for summary judgment); *Ali v. City of New York*, No. 11 Civ. 5469(LAK), 2012 WL 3958154, at *3 n. 10, 2012 U.S. Dist. LEXIS 126233, at *11 n. 10 (S.D.N.Y. Sept. 5, 2012) (noting that, "[i]n appropriate circumstances, summary judgment may be granted prior to discovery.").

■ Here, the Court may properly consider Defendants' motion as a motion for summary judgment. Plaintiff was provided with the materials required to give adequate notice to a *pro se* litigant of requirements of a summary judgment motion in accordance with Local Rule 56(b). (Dkt. 10–1 at 1–6). Plaintiff has not requested the opportunity for additional discovery, and he has attached to his opposition papers grievances, medical records, and affidavits in support of his claims. (Dkt. 17 at 15–102). Further, it is evident from the language used in Plaintiff's opposition papers that he understands the summary judgment standard and is responding to that standard. (*Id.* at 13) ("Wherefore, defendants [sic] motion for dismissal and/or summary judgment should be denied, and this complaint should be allowed to proceed to trial because the record here raises genuine issues of facts concerning both need and indifference.").

Of course, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001) (internal quotation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984). The Court has considered Plaintiff's papers in accordance with these principles.

## B. Eighth Amendment Claims: General Principles

Plaintiff alleges that Defendants have subjected him to cruel and unusual punishment in deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Dkt. 1 at ¶ 1); *see Estelle v. Gamble*, 429 U.S. 97, 101, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment." *Jones v. Westchester Cnty. Dep't*

of Corrs. Med. Dep't, 557 F.Supp.2d 408, 413 (S.D.N.Y.2008).

In order to successfully substantiate an Eighth Amendment claim for medical indifference, the plaintiff-inmate must prove that a defendant was deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104, 97 S.Ct. 285; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This analysis contains an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

■ Objectively, a medical need is serious for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), *cert. denied*, 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995)).

"There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir.2003). However, the Second Circuit Court of Appeals has presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.' " *Id.* (quoting *Chance*, 143 F.3d at 702).

■ "We do not ... require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." *Id.* at 163. "At the same time, however, '[a]n assertion

of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment.' " *Evan v. Manos*, 336 F.Supp.2d 255, 260 (W.D.N.Y.2004) (quoting *Livingston v. Goord*, 225 F.Supp.2d 321, 329 (W.D.N.Y.2002)).

■ "Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.' " *Lapierre v. Cnty. of Nassau*, 459 Fed.Appx. 28, 29 (2d Cir.2012) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996)). Specifically, a plaintiff must prove that the prison official knew of a serious medical condition and nonetheless disregarded the plaintiff's medical needs. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970 (holding that a prison official does not act in a deliberately indifferent manner towards an inmate unless he "knows of and disregards an excessive risk to inmate health or safety"); *see also Beaman v. Unger*, 838 F.Supp.2d 108, 110 (W.D.N.Y.2011) ("To establish deliberate indifference ... [a] plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.").

■ More than medical malpractice is required to establish a constitutional violation. "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness...." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir.2011). Similarly, mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285.

Consistent with those principles, "[i]t has long been the rule that a prisoner does

not have the right to choose his medical treatment as long as he receives adequate treatment." (*Hill*, 657 F.3d at 123). "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

### C. Application

■ In the instant matter, Plaintiff has established a genuine issue of material fact as to whether he suffers a serious medical need; however, he has failed to demonstrate that there is a genuine issue as to whether Defendants were deliberately indifferent to that serious medical need to support an Eighth Amendment claim.[2]

#### 1. Objective Test–Serious Medical Need

■ Plaintiff alleges that "Defendant's [sic] Levitt and Obertean created a serious medical need by treating the plaintiff for a condition that he never had, and continued the deliberate indifference to the serious medical need when they refused to treat him for the condition that they created." (Dkt. 1 at ¶ 30).

Plaintiff alleges that he improperly received treatment for tuberculosis in 2010 after a positive purified protein derivative ("PPD") test because he was vaccinated for tuberculosis as a youth. (*Id.* at ¶ 18). As a result of this test, Plaintiff alleges that he was placed on an improper medication regimen of Sucralfate, Docusate Sodium, and Omeprazole. (*Id.* at ¶ 19).

Plaintiff contends that these medications are only used to treat stomach ulcers, a condition with which Plaintiff has not been diagnosed. (*Id.*). Within seven days of starting these medications, Plaintiff claims he began to experience "extreme pain and discomfort in his abdomen." (*Id.* at ¶ 20). Plaintiff alleges that he experiences significant pain in his side and suspects that he has liver disease, and maintains that objectively this is a serious medical need. (Dkt. 17 at 10).

Defendants argue that "Plaintiff does not meet the objective standard because he does not allege a sufficiently serious medical need." (Dkt. 10–3 at 18). Specifically, Defendants note that "repeated examinations and procedures, including ultrasound examinations and x-rays, have found no evidence that there is anything wrong with plaintiff's liver." (Dkt. 10–3 at 18; Dkt. 10–4 at ¶¶ 21–25; Dkt. 12 at 15, 17, 19, 23, 25, 27). In addition, Defendants reiterate that Plaintiff has been seen by two different gastroenterologist consultants on three occasions with no significant findings, and that Plaintiff has been prescribed various medications to treat his nonspecific complaints. (Dkt. 10–3 at 19).

Defendants also argue that "Plaintiff's complaints of pain have been inconsistent and do not suggest extreme pain." (*Id.*). Although Plaintiff alleges liver damage and extreme pain, Defendants argue, Plaintiff's medical records show that Plaintiff has complained of, *inter alia*, "right-sided abdominal pain, to left-sided pain, to 'greasy food' intolerance, to difficulty swallowing (dysphagia)," and that there were

---

**2.** To the extent that Plaintiff seeks to assert deliberate indifference claims against Defendants in their official capacities, those claims must be dismissed as barred by the Eleventh Amendment. "Claims against state employees in their official capacity are deemed claims against the state itself, and are barred by the Eleventh Amendment." *Coleman v. Beale,* 636 F.Supp.2d 207, 212 (W.D.N.Y. 2009); *see Hilton v. Wright,* 928 F.Supp.2d 530, 546 (N.D.N.Y.2013) (dismissing deliberate indifference claim against prison doctor in official capacity).

no significant physical findings related to these complaints on examination. (Dkt. 10–3 at 19; Dkt. 10–4 at ¶ 19; Dkt. 12 at 29–45). Further, Defendants note that Plaintiff was referred to mental health to examine alternative sources for Plaintiff's complaints, but that testing did not reveal any positive findings. (Dkt. 10–3 at 19; Dkt. 10–4 at ¶¶ 29–30).

Plaintiff responds that he continues to suffer in pain. (Dkt. 17 at 5). Plaintiff states that "there has been night after night that plaintiff has not been able to sleep because of the pain." (*Id.*). Plaintiff claims that he is in chronic pain, that he cannot walk from the pain, and that he has to be carried to the hospital when he is in pain. (*Id.* at 9).

Attached to Plaintiff's opposition papers is an affidavit by Wende inmate Neron Dozier, 01–A–3845. (*Id.* at 99–100). Mr. Dozier states that he has witnessed Plaintiff fall to the floor in pain or lie on the floor in "intense pain." (*Id.* at 99). Mr. Dozier further states that Plaintiff often must be carried to the medical unit because the pain prevents Plaintiff from walking, and that he even assisted in carrying Plaintiff to the medical unit in a stretcher on one occasion. (*Id.* at 99–100).

Plaintiff also attaches the affidavit of Wende inmate Robert Cobb, 99–A–5214, who states that he works with Plaintiff in the mess hall and "frequently" sees Plaintiff "showing signs of nausea and fatigue" and "gasping pain and holding his right-side area." (*Id.* at 101).

The evidence offered by Plaintiff may be characterized as demonstrating chronic pain which could constitute a serious medical need.

"The Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977).

Here, the Court finds there are disputed issues of material fact as to whether Plaintiff has a serious medical need. Dr. Levitt found Plaintiff's complaints of pain "worthy of comment or treatment" as she ordered multiple tests to evaluate Plaintiff's physical and mental condition. (Dkt. 20 at 21–69). In addition, doctors have prescribed Plaintiff various medications to assist Plaintiff with his pain. (*Id.*).

Plaintiff has established issues of fact as to whether his perceived pain has significantly affected his daily activities. Plaintiff alleges that "night after night" he has been unable to sleep due to the pain. (Dkt. 17 at 5). The affidavits attached to Plaintiff's response papers further corroborate Plaintiff's allegations of pain and the impact that the pain has on Plaintiff's daily activities. Plaintiff has also established the existence of substantial pain over a period of over three years, as documented throughout his treatment notes in his medical records and extensive history of grievances on the subject. (Dkt. 17; Dkt. 20 at 21–69).

As a result, for the purposes of this motion, and particularly at this early stage of the proceedings, the Court finds that there are disputed issues of fact as to whether Plaintiff has experienced significant and chronic pain to establish a serious medical need.

### 2. Subjective Test–Deliberate Indifference

Plaintiff alleges that "Defendant's [sic] Levitt and Obertean created a serious medical need by treating the plaintiff for a condition that he never had, and continued the deliberate indifference to the serious medical need when they refused to treat him for the condition that they created." (Dkt. 1 at ¶ 30). In addition, Plaintiff com-

plains that "Defendants' [sic] Fischer, Koenigsmann, Artus and Killinger have demonstrated deliberate indifference to the plaintiff's serious medical needs by failing to take appropriate preventing measures when first informed of plaintiff's condition and concerns." (*Id.* at ¶ 32). In response, Defendants argue that Plaintiff has failed to allege that Defendants had a sufficiently culpable state of mind. (Dkt. 10–3 at 20).

Plaintiff's conclusory statements of deliberate indifference to his serious medical needs do not create a genuine issue of material fact to survive summary judgment.

### a. Tuberculosis Treatments

■ Defendants maintain that Plaintiff's treatments for tuberculosis were necessary because Plaintiff tested positive for tuberculosis, despite having been vaccinated as a child. (Dkt. 10–3 at 20; Dkt. 10–4 at ¶¶ 8–10). Defendants argue that Plaintiff's housing in a correctional facility made it particularly important to treat Plaintiff for tuberculosis where inmates live in close contact with one another. (Dkt. 10–3 at 21; Dkt. 10–4 at ¶¶ 11–13).

Contrary to Plaintiff's argument, the testimony of Dr. Levitt as well as the evidence of record shows that Defendants did not engage in deliberate indifference by treating Plaintiff for tuberculosis. Plaintiff's medical records show that Plaintiff tested positive for tuberculosis while housed at Downstate Correctional Facility. (Dkt. 10–4 at ¶ 9; Dkt. 12 at 7, 9). Plaintiff's skin test registered positive for tuberculosis at 20 mm. (Dkt. 10–4 at ¶ 13). A skin test registering over 5 mm indicates that treatment is necessary in a prison situation. (*Id.*). Dr. Levitt explained that the danger for the potential spread of tuberculosis is high in sites where individuals live in close contact, such as a prison. (*Id.* at ¶ 12). As a result, it is important for prison administration to strictly adhere to the measures designed to prevent the spread of highly communicable diseases, such as tuberculosis. (*Id.*). Based on Plaintiff's test results, the Court cannot conclude that Defendants erred in administering treatment to eradicate tuberculosis.

Even if Defendants erred in treating Plaintiff for tuberculosis, this error would be one of medical malpractice, which is not properly brought under § 1983. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. In short, there are no genuine issues of material fact. Treating Plaintiff for tuberculosis after a positive PPD test did not constitute deliberate indifference.

### b. Sick–Call Visits

■ Plaintiff contends that Defendants Levitt and Obertean failed to actually examine Plaintiff following his complaints of side and abdominal pain. For example, Plaintiff alleges that at one appointment with Dr. Levitt, after Plaintiff complained of his abdominal and side pain, Dr. Levitt performed a "perfunctory" examination, prescribed Plaintiff with medication for an upset stomach, and placed Plaintiff on a controlled diet. (Dkt. 1 at ¶ 21).

Plaintiff claims that he reported to emergency sick-call at least 39 times between August 20, 2010, and February 22, 2001, to complain of the pain in his liver and abdomen. (*Id.* at ¶ 22). According to Plaintiff, he was continually instructed to continue taking his medication, although the medication was indicated for stomach ulcers, a condition Plaintiff did not have. (*Id.*). Plaintiff suggests that he has been

improperly prescribed medications that are "only used for stomach ulcers." (*Id.* at ¶ 19; Dkt. 17 at 22). Defendants acknowledge that Plaintiff has been prescribed Sucralfate, Docusate Sodium, and Omeprazole. (Dkt. 10–4 at ¶ 26; Dkt. 12 at 23). However, contrary to Plaintiff's assertions, these medications are not "only used for stomach ulcers." (Dkt. 10–4 at ¶ 26). Rather, these medications have been prescribed for "nonspecific gastrointestinal complaints." (Dkt. 19–1 at ¶ 53).

Plaintiff also objects to his referral to mental health, believing that Defendants were calling him "crazy" and not seriously considering his allegations of pain. (Dkt. 1 at ¶ 26). Plaintiff states that Defendants Levitt and Obertean were "deliberately indifferent to his pain and suffering when he informed Levitt and Obertean of his pain and they needlessly allowed plaintiff to suffer in pain and constantly told plaintiff that it was all in his mind." (Dkt. 17 at 5). Further, Plaintiff suggests that Defendants have intentionally allowed him to suffer in pain because "they grow [upset] with plaintiff for complaining all the time." (*Id.* at 10).

As for Plaintiff's allegations that Defendants have failed to address Plaintiff's complaints following the tuberculosis treatment, the evidence demonstrates that Defendants have taken numerous steps to address Plaintiff's complaints. (Dkt. 10–4 at ¶¶ 18, 20, 22–25, 29; Dkt. 20 at 21–69). Plaintiff has been treated by six different medical providers on over 40 different occasions over the course of approximately three and a half years. (Dkt. 1 at ¶ 22; Dkt. 10–4 at ¶ 18). Defendants' decision to refer Plaintiff to mental health services does not establish that Defendants called Plaintiff "crazy." Rather, it is further evidence of Defendants' efforts to rule out any potential source of Plaintiff's alleged symptoms.

Defendants argue that "there is no evidence of any malicious intent on the part of any of the defendants" as evidenced by Plaintiff's numerous sick-call examinations, lab tests, and visits with specialists. (Dkt. 10–3 at 21; Dkt. 10–4 at ¶¶ 20–26).

Indeed, there is no evidence that Defendants intended to cause Plaintiff to suffer unnecessary pain. Plaintiff must establish that Defendants engaged in conduct that is " 'repugnant to the conscience of mankind,' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Evan,* 336 F.Supp.2d at 261 (quoting *Estelle,* 429 U.S. at 106, 97 S.Ct. 285). Plaintiff's conclusory claims in opposition do not demonstrate the requisite state of mind for deliberate indifference.

### c. Requests for a Liver Biopsy

Plaintiff alleges that in March 2012, he encouraged Defendant Koenigsmann "to direct Dr. Levitt to order a liver biopsy due to the fact that plaintiff had followed all of the Defendants' Levitt and Obertean directions, but had experienced no improvement in his condition; in fact, plaintiff's condition had only become worse." (Dkt. 1 at ¶ 23). Plaintiff states that Defendant Koenigsmann responded to this complaint on April 19, 2012, saying that a liver biopsy was not medically necessary. (*Id.* at ¶ 24).

Plaintiff argues that Defendants have failed to provide him adequate medical treatment because they have denied his requests for a liver biopsy. (Dkt. 10–4 at ¶ 27). However, as Dr. Levitt testified, none of the numerous medical examinations or laboratory results indicated that a liver biopsy was necessary. (*Id.* at ¶ 28). According to the sworn testimony of Dr. Levitt, a liver biopsy is "an invasive procedure and has potentially dangerous side effects." (*Id.*).

Plaintiff particularly relies on one September 2, 2010, treatment note associated with one of Plaintiff's ultrasounds, which suggested Plaintiff had a "coarse appearing liver which may indicate cirrhotic change." (Dkt. 12 at 13). When Defendants followed up with an ultrasound on November 23, 2010, at Erie County Medical Center, the ultrasound found that Plaintiff's liver was unremarkable. (*Id.* at 21). However, the report from that ultrasound includes a section which states, under a section called "History" that Plaintiff has "+ PPD recently treated, U.S. with cirrhosis of the liver." (Dkt. 20 at 15). Plaintiff believes that this note indicates that he has cirrhosis of the liver. (*Id.* at 4). Defendants explain that this section merely reports Plaintiff's treatment history, and refers to the September 2, 2010, ultrasound which suggested Plaintiff may have cirrhotic change. (Dkt. 19–1 at ¶¶ 26–39). Indeed, the November 2010 ultrasound showed no cirrhotic damage to Plaintiff's liver. (Dkt. 12 at 21). Additionally, Defendants note that Plaintiff had another ultrasound on August 24, 2013, which confirmed that Plaintiff does not have liver damage. (Dkt. 19–1 at ¶ 38; Dkt. 20 at 7). In response, Plaintiff argues that "[a]ll the tests and lab work in the world will not help if there is a problem and the medical staff refuse to treat the problem, or tell a person that the pain he is in is all in his head, or give him medication for a condition that he doesn't have." (Dkt. 17 at 10). Plaintiff's conclusory allegations of denial of treatment do not create a genuine issue of fact in light of the numerous test results and medical records demonstrating that Defendants did not ignore Plaintiff's complaints of pain and did provide treatment for Plaintiff's allegations of pain.

"In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety." *Wright v. Genovese,* 694 F.Supp.2d 137, 154 (N.D.N.Y.2010) (internal citations omitted). Here, Defendants did not disregard Plaintiff's allegations of pain.

All that the record shows is that Plaintiff subjectively believes that more should have been done for him, and that he disagrees with the course of treatment that he received from Defendants. The fact that Plaintiff disagrees with the course of treatment provided to him at Wende is not a basis for a claim for deliberate indifference. *Graham v. Gibson,* No. 04–CV–6088–CJS–MWP, 2007 WL 3541613, at *8, 2007 U.S. Dist. LEXIS 84353, at *23 (W.D.N.Y. Nov. 14, 2007) ("[A] difference of opinion about how an inmate should be treated does not support … a constitutional claim under § 1983.").

 It is well-established that "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703. "Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Joyner v. Greiner,* 195 F.Supp.2d 500, 504–05 (S.D.N.Y.2002). "Determinations made by medical providers within their discretion are given a presumption of correctness when it concerns the care and safety of patients." *Mendoza v. McGinnis,* No. 9:05–CV–1124 (TJM/DEP), 2008 WL 4239760, at *11, 2008 U.S. Dist. LEXIS 110057, at *36 (N.D.N.Y. July 24, 2008) (internal quotation omitted).

 "[T]he question whether … diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment. A medical

decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107, 97 S.Ct. 285 (reversing judgment against medical director where director treated plaintiff's alleged back pain and injury, but did not perform an x-ray or diagnose the pain in the manner plaintiff desired); *see also Joyner*, 195 F.Supp.2d at 504 (finding "the fact that plaintiff wanted an MRI done does not mean that the doctor who refused to order one was deliberately indifferent to his medical needs").

Plaintiff's requests for different medications or a liver biopsy show merely a disagreement between Plaintiff and his medical providers concerning his medical treatment. There is no evidence that any of Defendants were deliberately indifferent to Plaintiff's serious medical need. Even if a liver biopsy or further testing was justified, (and the Court makes no finding in that regard), Defendants' decision not to conduct such testing does not give rise to an Eighth Amendment violation. Plaintiff's disagreement or dissatisfaction with his treatment is not enough.

### d. Interpreter Services

Plaintiff further alleges that on April 12, 2011, he was denied an interpreter to clearly communicate his medical concerns with Nurse Obertean, and that this is an example of deliberate indifference to his medical needs. (Dkt. 1 at ¶ 25).

According to Defendants, Plaintiff has been provided with an interpreter for every medical appointment. (Dkt. 10–4 at ¶ 31–32; Dkt. 12 at 29–45). Indeed, the record contains one treatment note that shows Plaintiff's medical appointment was rescheduled because Plaintiff required a Spanish interpreter. (Dkt. 12 at 37; Dkt. 17 at 53). Defendants state that if an interpreter is not available for an appointment, Plaintiff's appointment is rescheduled. (Dkt. 10–3 at 21). In fact, Defendants note that Plaintiff's April 13, 2011, appointment with Defendant Obertean was rescheduled so that an interpreter could be present. (Dkt. 19 at 8; Dkt. 19–1 at ¶ 58).

Complete failure to provide an interpreter in a systemic way may violate the Eighth Amendment provision against cruel and unusual punishment. *See Clarkson v. Coughlin*, 898 F.Supp. 1019, 1049 (S.D.N.Y.1995) (finding defendants' failure to provide sign language interpreter for medical treatments of deaf inmates constituted cruel and unusual punishment). However, this finding is "limited to those instances of medical care in which communication between the patient and medical personnel are essential to the efficacy of the treatment in question." *Id.*

Even if Plaintiff was not provided an interpreter on April 13, 2011, there is nothing to suggest—and Plaintiff does not assert—that he was overall unable to effectively express his concerns in that treatment session. Considering the wealth of tests performed to address Plaintiff's concerns, the Court finds that any failures to provide a Spanish interpreter for Plaintiff, given the particular facts and circumstances of this case, do not demonstrate deliberate indifference on behalf of Defendants.

At the most, Defendants may have been negligent in treating some other medical condition that is causing Plaintiff's alleged symptoms of pain. This does not sustain a claim for deliberate indifference. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285 ("That a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Contrary to Plaintiff's assertions, the record presents no material issue of fact as to whether Defendants responded to Plain-

tiff's complaints of pain in an appropriate and professional manner.

In order to establish an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must show both a serious medical need and deliberate indifference to that need. Because Plaintiff has failed to establish, beyond conclusory allegations, that Defendants were deliberately indifferent to his serious medical need, summary judgment must be granted in favor of Defendants.

## D. Personal Involvement

Plaintiff alleges that he filed numerous complaints with Defendants Fischer, Koenigsmann, Artus, and Killinger in an attempt to "obtain proper medical treatment," and that these requests were ignored. (Dkt. 1 at ¶ 25). Plaintiff further claims that "[o]n at least seven (7) different occasions, plaintiff informed [Defendants of his condition, expressed his concerns, and requested their assistance in receiving proper medical treatment for a serious medical need.] At least twice, Defendant Koenigsmann was contacted by Prisoners' Legal Services, informing him of the plaintiffs' condition. Defendant Koenigsmann chose to ignore these communications, and failed to take the proper preventive measures to address plaintiff's concerns." (Id. at ¶ 33).

Plaintiff argues that Defendants Fischer, Koenigsmann, Artus, and Killinger were all deliberately indifferent to Plaintiff's serious medical needs because he sent them each written complaints so that they were each aware of Plaintiff's pain, yet none utilized their authority to "give plaintiff proper medical treatment instead of going along with medical staff." (Dkt. 17 at 5). In addition, Plaintiff argues that Defendants Fischer and Koenigsmann were not merely "in the chain of command," but that they had personal involvement because Plaintiff mailed them letter complaints concerning his pain. (Id. at 12).

There is no evidence that Defendants Fischer or Artus had any personal involvement in the alleged constitutional violations. Therefore, even if Plaintiff had made out a claim against Defendants Koenigsmann, Killinger, Levitt, and/or Obertean, the claims against Defendants Fischer and Artus must be dismissed. See Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

■■■ "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of his constitutional or statutory rights by a person acting under color of state law." Lloyd v. Lee, 570 F.Supp.2d 556, 565 (S.D.N.Y.2008). "In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir.1991).

Plaintiff alleges that Defendants Fischer and Artus were deliberately indifferent to his serious medical needs because they failed to assist Plaintiff after being informed of his concerns through letters, grievances, and complaints. (Dkt. 1 at ¶¶ 23, 25, 26, 32; Dkt. 17 at 8).

As to Defendant Fischer, Plaintiff alleges that Fischer received his complaints and grievances but failed to take preventive measures to assist Plaintiff, resulting in deliberate indifference to his medical needs. (Id. at ¶ 32).

■■■ Plaintiff does not claim that Defendant Fischer did anything more than receive letters and grievances. "[T]he re-

ceipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer,* 682 F.Supp.2d 423, 430 (S.D.N.Y.2010) (citing *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997)). Therefore, all claims against Defendant Fischer are dismissed.

 Plaintiff alleges that Defendant Artus responded to Plaintiff's grievances concerning an interpreter and allegations that Wende staff had called Plaintiff "crazy," and therefore became personally involved. (Dkt. 1 at ¶¶ 25–26). However, Plaintiff has failed to demonstrate that Defendant Artus had any direct involvement in the decisions surrounding Plaintiff's medical treatment. Denial of a grievance alone is insufficient to show personal involvement. *See Joyner,* 195 F.Supp.2d at 506 ("The fact that [the] Superintendent . . . affirmed the denial of plaintiff's grievance—which is all that is alleged against him—is insufficient to establish personal involvement."); *Ramsey v. Goord,* No. 05–CV–47A, 2005 WL 2000144, at *8, 2005 U.S. Dist. LEXIS 42953, at *8 (W.D.N.Y.2005) ("[T]he fact that a prison official in the prison 'chain of command' affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official.").

"It is clear that 'affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983,' particularly if the grievance involves medical care and the reviewer has no medical training." *Hardy v. Diaz,* No. 08 Civ. 1352 (GLS/ATB), 2010 WL 1633379, at *7, 2010 U.S. Dist. LEXIS 39295, at *25 (N.D.N.Y. Mar. 30, 2010) (quoting *Manley v. Mazzuca,* No. 01 Civ. 5178(KMK), 2007 WL 162476, at *10, 2007 U.S. Dist. LEXIS 4379, at *10 (S.D.N.Y. Jan. 19, 2007)). Defendant Ar-

tus is the Superintendent of Wende. (Dkt. 10–3 at 1–2). He has no medical training, and is entitled to rely on the medical decisions of the doctors at Wende in making his decision affirming the denial of Plaintiff's grievances. Therefore, because Plaintiff has failed to show that Defendant Artus had any personal involvement in Plaintiff's medical treatment, Plaintiff's claims against Defendant Artus are dismissed.

Because Plaintiff has not established an underlying constitutional violation, Plaintiff's claims as against the remaining supervisory defendants are also dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion (Dkt. 10) for summary judgment is granted, and Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.