Misael **MONTALVO**, 131327, Plaintiff,

v.

Commissioner of Correction F. **LAMY**, Comm. Corr. F. Sullivan, Sheriff T. Howard; Undersheriff Mark Wipperman; Super. T. Diina; First D.S. M. Reardon; Chief Harris; Capt. Hartman; Sgt. Usinski; Sgt. Kuppel; Sgt. Diamond; Sgt. McAndrew; Sgt. John Doe; Dep. Sheriff John Doe; Dep.

---

598

Sheriff Brown; Dep. Sheriff Harvey; Nurse Practitioner Sharon Galbo; Nurse Practitioner Janet Collesano; County of Erie; Keefe Commissary Network, LLC; Thomas Reuter; and Thomas J. Loughren, Defendants.

No. 6:14–CV–6251 EAW.

United States District Court, W.D. New York.

Signed Sept. 30, 2015.

Misael Montalvo, Rochester, NY, pro se.

Alisa A. Lukasiewicz, Buffalo, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

Plaintiff Misael Montalvo ("Plaintiff"), an inmate previously confined at the Erie County Holding Center ("ECHC") commenced the instant action on May 15, 2014 (Dkt. 1). Plaintiff alleges that he is a diabetic and that, while incarcerated at ECHC, he was not provided with a medically appropriate diet, was not permitted to purchase food items from the prison commissary, and was the subject of false misbehavior reports when he complained about his dietary issues. Plaintiff also alleges that his due process rights were violated in connection with a disciplinary hearing.

Currently pending before the Court are two motions to dismiss the Complaint—one made by Defendants Sheriff T. Howard, Undersheriff Mark Wipperman, Superintendent T. Diina, First Deputy Superintendent M. Reardon, Chief Harris,

Captain Hartman, Sergeant Usinski, Sergeant Kuppel, Sergeant Diamond, Sergeant McAndrew, Sergeant John Doe, Deputy Sheriff John Doe, Deputy Sheriff Harvey, Nurse Practitioner Sharon Galbo, Nurse Practitioner Janet Collesano, Deputy Brown, and the County of Erie (the "ECHC Defendants")[1] on January 26, 2015 (Dkt. 12), and one made by Defendant Keefe Commissary Network, LLC ("Keefe Commissary") on March 9, 2015 (Dkt. 22). Despite having been given more than six months to respond to these motions, Plaintiff has failed to file any opposition. For the reasons set forth below, the ECHC Defendants' motion is granted in part and denied in part and Keefe Commissary's motion is granted. Plaintiff will be permitted to proceed on his Eighth Amendment medical indifference claim against Nurse Practitioners Sharon Galbo and Janet Collesano and his Fourteenth Amendment due process claim against Sgts. Usinski and Kuppel, for the reasons set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

According to Plaintiff, he was diagnosed with diabetes at the age of 15 and requires daily medical treatment to manage his condition. (Dkt. 1 at 9). Plaintiff claims he was placed on a special diet at ECHC due to his diabetes. (Id. at 13). Plaintiff further alleges that ECHC has a policy that inmates with dietary restrictions are not permitted to purchase food items from the commissary. (Id. at 13–14). Plaintiff states that as a result of not being permitted to purchase such food items, he was required to rely on being provided an adequate diet by ECHC to stabilize his insulin

1. The complaint identifies Nurse Practitioner Sharon Galbo as "Nurse Practitioner Sharon," Nurse Practitioner Janet Collesano as "Nurse Practitioner Janet," and Deputy Brown as ·"Deputy Sheriff Brown." The

Clerk of Court is instructed to correct the caption of this case to properly identify Defendants Galbo and Collesano. As the claims against Deputy Brown are dismissed, his name will be removed from the case caption.

level, and that ECHC failed to provide such a diet. *(Id.)*. According to Plaintiff, he did not have access to snacks between the hours of 4:30 p.m. and 9:00 a.m., which caused his blood sugar to "bottom[ ] out." *(Id.* at 17–18).

Plaintiff further alleges that in February of 2013, false misbehavior charges were leveled against him, and that he was denied a Spanish-speaking interpreter during the hearing related to these charges. *(Id.)*. Plaintiff states that he was sentenced to 180 days in the special housing unit ("SHU") as a result of the hearing, and that while in the SHU, he had several medical emergencies where his blood sugar "bottom[ed] out." *(Id.* at 19–20).

Plaintiff claims that he was the subject of a second false misbehavior report in October of 2013. *(Id.* at 21). Specifically, Plaintiff claims that he had filed a grievance against Defendant Deputy Brown, and that Deputy Brown filed a false misbehavior report in retaliation. *(Id.)*.

Finally, Plaintiff alleges that Defendant Sgt. McAndrew refused to process Plaintiff's grievance related to his exclusion from the commissary program because he was unable to supersede a medical policy. *(Id.* at 22). Plaintiff seeks both monetary damages and injunctive relief. *(Id.* at 23–25).

Plaintiff commenced the instant action on May 15, 2014. (Dkt. 1). The ECHC Defendants filed their motion to dismiss on January 26, 2015. (Dkt. 12). The Court issued a scheduling order requiring Plaintiff to file a response by February 17, 2015. (Dkt. 16). Plaintiff filed a motion for an extension of time (Dkt. 17), which the Court granted, extending Plaintiff's time to reply until May 4, 2015 (Dkt. 18). On March 9, 2015, Keefe Commissary filed its motion to dismiss. (Dkt. 22). The Court entered a scheduling order requiring Plaintiff to file a response to Keefe Commissary's motion no later than May 4,

2015. (Dkt. 26). On April 15, 2015, Plaintiff filed a second motion for an extension of time. (Dkt. 28). The Court granted Plaintiff's request and set the response deadline as to both motions to dismiss for September 1, 2015. (Dkt. 29). The Court warned Plaintiff that no further extensions of the deadline would be granted. *(Id.)*. To date, Plaintiff has failed to file response papers with respect to either of the pending motions to dismiss.

## DISCUSSION

### I. Standard of Review

" 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

Additionally, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001) (internal quotation marks omitted); *see also Hemphill v. N.Y.*, 380 F.3d 680, 687 (2d Cir.2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Moreover, "a *pro se* litigant should be afforded every opportunity to demonstrate that he has a valid claim." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 762 (2d Cir.1990) (alteration in original) (internal quotation marks omitted).

## II. Plaintiff's Request for Injunctive Relief

■ As a threshold matter, the ECHC Defendants argue that Plaintiff's requests for injunctive relief are moot because he is no longer housed at ECHC. (Dkt. 14 at 22–23). They are correct. "A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d

411, 415 (2d Cir.2002); *see also Rosales v. Wright*, No. 10–CV–6044L, 2012 WL 87123, at *1 (W.D.N.Y. Jan. 11, 2012) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility....") (quotation omitted).

Plaintiff's submissions to this Court state that he is currently incarcerated at the Monroe County Jail. (Dkt. 28 at 1). The ECHC Defendants' moving papers confirm that Plaintiff is no longer incarcerated at ECHC. As a result, "there is no way in which the Court could grant the [injunctive] relief sought by plaintiff as against the moving defendants" and dismissal of Plaintiff's requests for equitable relief is warranted because the Court lacks subject matter jurisdiction over moot claims. *Rosales*, 2012 WL 87123 at *2.

## III. Plaintiff's Constitutional Claims

Plaintiff's complaint asserts, pursuant to 42 U.S.C. § 1983, claims for violation of Plaintiff's rights under the First, Eighth, and Fourteenth Amendments (collectively Plaintiff's "constitutional claims"). (Dkt. 1 at 9). The Court considers each of these claims below.

### A. Plaintiff's Constitutional Claims Against Keefe Commissary

■ Keefe Commissary argues that all of Plaintiff's constitutional claims against it must be dismissed because it is a private actor. (Dkt. 24 at 4–5). Additionally, Keefe Commissary notes that the complaint is devoid of any factual allegations setting forth actions by Keefe Commissary that allegedly violated Plaintiff's constitutional rights. (*Id.* at 5).

■ A private employer is liable for the constitutional torts of its employees only if those employees were acting under color of state law and the plaintiff proves that "action pursuant to official ... *policy*

of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 408 (2d Cir.1990) (quotation omitted); *see also Goodnow v. Palm,* 264 F.Supp.2d 125, 130 (D.Vt.2003) (prison medical contractor was potentially liable for alleged constitutional torts of its employees because of official policy of prioritizing "more serious" cases). The complaint does not allege that Keefe Commissary had a policy of denying commissary access to diabetic prisoners. To the contrary, the complaint makes it plain that it was ECHC that maintained a policy of limiting commissary access for prisoners with dietary restrictions. The complaint further acknowledges that Keefe Commissary's role was simply to manage the commissary program within ECHC. (Dkt. 1 at 10). Nowhere does the complaint allege that Keefe Commissary had any authority or ability to override ECHC's policy with respect to inmates with dietary restrictions. In fact, the complaint is virtually devoid of factual allegations involving Keefe Commissary. Under these circumstances, dismissal of Plaintiff's constitutional claims against Keefe Commissary is appropriate.

### B. Plaintiff's Constitutional Claims Against the ECHC Defendants

#### 1. Plaintiff's First Amendment Claim

The ECHC Defendants argue that Plaintiff's First Amendment claim should be dismissed because it is insufficiently supported by factual allegations. The Court agrees.

"The Second Circuit has . . . cautioned district courts to approach prisoner retaliation claims 'with skepticism and particular care,' since 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Crenshaw v.*

*Hartman,* 681 F.Supp.2d 412, 415 (W.D.N.Y.2010) (quoting *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001)). "A First Amendment retaliation claim requires that the plaintiff show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Barnes v. Alves,* 58 F.Supp.3d 296, 315 (W.D.N.Y.2014) (quotation omitted). It is well-established that "the filing of prison grievances is a constitutionally protected activity . . . ." *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003).

In this case, Plaintiff alleges that he filed grievances against Defendant Deputy Brown and that Deputy Brown retaliated against him by filing "fabricated misbehavior reports" on or about October 6, 2013. (Dkt. 1 at 21). Plaintiff attaches to his complaint a grievance dated September 30, 2013, in which he claims that Deputy Brown threatened him and "denied [him] a grievance." (*Id.* at 34). Plaintiff also attaches to his complaint a disciplinary hearing record and a disciplinary report dated October 6, 2013, which identify Deputy Brown as the "reporting officer" and which claim that Plaintiff defied a direct order from Deputy Brown. (*Id.* at 35–36).

As the ECHC Defendants have argued, "it is clear through Plaintiff's own attachments that [the ECHC Defendants'] discipline was not a retaliatory measure." (Dkt. 14 at 17). Plaintiff's own submission shows that he pled guilty to two of the four charges brought against him by Deputy Brown. (Dkt. 1 at 35). "Although plaintiff was found not guilty of the other two charges . . . [the guilty plea] certainly suggests that there was a valid basis for the issuance of the report, and plaintiff's conclusory assertion that it was retaliatory in nature fails to state a plausible claim."

*Crenshaw,* 681 F.Supp.2d at 416 (collecting cases). In other words, Plaintiff has no basis for now alleging that Deputy Brown's report was false and retaliatory when he conceded, through his guilty plea, that it was based in fact. Deputy Brown's disciplinary report thus cannot form the basis for a First Amendment retaliation claim. *See id.*

▉ Plaintiff also alleges that Defendant Sgt. McAndrew would not process his grievance related to his inability to purchase snacks from the commissary. (Dkt. 1 at 22). "While the First Amendment guarantees the right of access to courts, grievance programs were undertaken voluntarily and have no legal basis in the Constitution. Therefore these programs are not considered constitutional rights. Thus, courts have consistently held that violations of those procedures or the state's failure to enforce them does not give rise to a claim under § 1983." *Tafari v. McCarthy,* 714 F.Supp.2d 317, 349 (N.D.N.Y.2010) (citation omitted). Moreover, Plaintiff's own submissions support the conclusion that Sgt. McAndrew was acting in compliance with 9 N.Y.C.R.R. § 7032.4(h), which required him, as the Grievance Coordinator, to return to Plaintiff grievances regarding issues "outside the authority of the chief administrative officer to control," such as medical decisions made by health care professionals. (Dkt. 1 at 38). Plaintiff's complaint fails to plausibly allege a First Amendment claim against Sgt. McAndrew.

There are no other incidents described in the complaint that plausibly implicate Plaintiff's rights under the first Amendments. As a result, Plaintiff's First Amendment claims are dismissed.

### 2. Plaintiff's Eighth Amendment Claims

Plaintiff asserts an Eighth Amendment claim for deliberate indifference to medical needs. The ECHC Defendants argue that this claim should be dismissed because (1) Plaintiff had no right to access the prison commissary and (2) Plaintiff has not alleged a culpable state of mind with respect to the alleged deprivations. (Dkt. 14 at 11–12).

▉ "In order to successfully substantiate an Eighth Amendment claim for medical indifference, the plaintiff-inmate must prove that a defendant was deliberately indifferent to a serious medical need. This analysis contains an objective and a subjective component." *Morales v. Fischer,* 46 F.Supp.3d 239, 247 (W.D.N.Y.2014) (citations omitted). "Objectively, a medical need is serious for constitutional purposes if it presents a condition of urgency that may result in 'degeneration or extreme pain.... Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the equivalent of criminal recklessness.'" *Id.* (citations and quotations omitted).

▉ The Court agrees with the ECHC Defendants that prisoners have no constitutional right to access a commissary. *See Mitchell v. City of N.Y.,* No. 10 CIV. 4121(PKC), 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011) (dismissing diabetic prisoner's claims related to items available at commissary "because there is no constitutional right to access a prison commissary"); *Davis v. Shaw,* No. 08 CIV. 364(NRB), 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009) ("courts have declined to afford inmates a constitutional right to the use of a prison commissary"); *Torres v. Droun,* No. 301CV1844(DJS)(TPS), 2004 WL 721729, at *7 (D.Conn. Mar. 30, 2004) ("plaintiff has no constitutional right to purchase items from the commissary or outside vendors"). To the extent Plaintiff's constitutional claims are based on his inability to purchase snacks from the commissary, they are dismissed.

However, Plaintiff also alleges that he was deprived of a nutritionally adequate diet. Specifically, Plaintiff alleges that he was not provided with a diet that properly accounted for his diabetic condition and that as a result, his blood sugar would frequently "bottom out." · (Dkt. 1 at 18). Moreover, Plaintiff alleges that while he was in the SHU, his medical needs were neglected to the· point that he·had to be provided with emergency medical attention on "numerous occasions" and that on or about April 7, 2013, he "nearly died" when his blood sugar dipped to a · level that caused him to become unconscious. ·(*Id.* at 20). Defendant Nurse Practitioners Sharon Galbo and Janet Collesano are alleged to have been aware that Plaintiff's diet was inappropriate for someone with his health issues and to have refused to remedy the situation. (*Id.* at 17–18).

■■■■■ "Although the Constitution does not require· that sentenced prisoners receive every amenity which one might find desirable, the Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Grieco v. Fischer,* No. 12–CV–429S SR, 2013 WL 5488905, at *3 (W.D.N.Y. Sept. 30, 2013) (quotation omitted). Here, Plaintiff has adequately ·alleged that the food provided to him by ECHC was not nutritionally adequate with respect to his status as a diabetic and that the diet he was provided presented an immediate danger to his health and wellbeing. *See id.* at *4 (denying motion to dismiss because plaintiff had adequately alleged that prison diet was not medically appropriate for individuals with diabetes). Plaintiff has thus met the objective component of a claim for medical indifference.

■■■ The ECHC Defendants' argument that Plaintiff has not satisfied the subjective component of a medical indifference claim because "there· are · no allegations from which it may plausibly be inferred that Defendants knew that the diet provided was not adequate or likely to inflict harm upon Plaintiff" (Dkt. 14 at 12) is without merit. First, Plaintiff alleges that he required emergency medical intervention on numerous occasions because his blood sugar was inadequately controlled by the diet provided at ECHC. Deliberate indifference may be inferred where a risk to a pre-trial detainee's health is so obvious that the defendant must have known of it, yet did not provide appropriate treatment. *Gabriel v. Cnty. of Herkimer,* 889 F.Supp.2d 374, 398 (N.D.N.Y.2012). ·Here, Nurse Practitioners· Galbo and Collesano treated Plaintiff and it is reasonable to infer that they were aware of these medical emergencies. Moreover, Plaintiff specifically alleges that Nurse Practitioners Galbo and Collesano were aware that the diet he was provided allowed his blood sugar to become dangerously low overnight, yet did not take any steps to remedy the situation. (Dkt. 1 at·17–18). At this stage of the proceedings, these allegations are enough to plausibly suggest that Nurse Practitioners Galbo and Collesano were aware of and disregarded an excessive risk to Plaintiff's health.

However, as to the individual ECHC Defendants other than Nurse Practitioners Galbo and Collesano, the Court finds that Plaintiff has failed to adequately allege personal involvement in the claimed medical indifference. *See Rivera v. Lempke,* 810 F.Supp.2d 572, 576 (W.D.N.Y.2011) (in a § 1983 case, "as to each defendant, plaintiff must allege facts showing the defendant's personal involvement in the alleged constitutional violation. To make such a showing, it is not enough to allege that the defendant played some sort of supervisory

role, since there is no *respondeat superior* liability in § 1983 cases"). There are no factual allegations in the complaint suggesting that any of the remaining individual ECHC Defendants were aware that Plaintiff's diet was nutritionally inadequate. As a result, Plaintiff's Eighth Amendment claim is dismissed as to the individual ECHC Defendants except Nurse Practitioners Galbo and Collesano.

## C. Plaintiff's Fourteenth Amendment Claim

It appears from a liberal reading of Plaintiff's complaint that he is seeking to assert a claim for denial of due process in connection with a disciplinary hearing held on February 16, 2013. (*See* Dkt. 1 at 18–19). Plaintiff alleges that Defendants Sgt. Usinski and Sgt. Kuppel were involved in this disciplinary hearing and that Sgt. Kuppel conducted the hearing in "a malicious and arbitrary manner." (*Id.* at 19). Plaintiff also claims that he was denied a Spanish interpreter, the right to call witnesses, the right to conduct legal research, and the right to "tier hearing assistance." (*Id.* at 18). According to Plaintiff, as a result of this tainted hearing, Sgt. Kuppel sentenced him to 180 days in the SHU. (*Id.* at 19–20).

■■■■ "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra,* No. 14–CV–6346L, 123 F.Supp.3d 419, 422, 2015 WL 5011976, at *1 (W.D.N.Y. Aug. 24, 2015). "[A] prisoner has a liberty interest that is implicated by SHU confinement if it imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *J.S. v. T'Kach,* 714 F.3d 99, 106 (2d Cir.2013) (quotation omitted).

SHU sentences between 101 and 305 days "require a district court to articulate specific findings of the conditions of the imposed confinement relative to ordinary prison conditions before determining whether such confinement is atypical.... Such a determination is anything but simple, and cannot be resolved summarily." *Reynoso v. Selsky,* 292 Fed.Appx. 120, 123 (2d Cir.2008). Here, Plaintiff has alleged that his confinement in the SHU amounted to an atypical and significant hardship because he does not speak English and was denied access to legal materials in Spanish, he was denied access to the law library, and he was denied medical care. At this preliminary stage of the proceedings and reading the *pro se* Plaintiff's allegations liberally, the Court finds that Plaintiff has adequately alleged a protected liberty interest.

■■■■ Plaintiff has also adequately alleged that the disciplinary hearing in question did not comport with due process. "Although an inmate facing disciplinary charges is not entitled to the full panoply of due process rights that one is entitled to in a criminal trial, there are nevertheless certain minimum procedural safeguards that must be provided under the Constitution. For example, an inmate subject to a disciplinary hearing is entitled to: (1) advance written notice of the charges against him, (2) the opportunity to call witnesses and present documentary evidence in his defense and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action." *Loret v. Selsky,* 595 F.Supp.2d 231, 233 (W.D.N.Y.2009) (quotation omitted). In this case, Plaintiff has alleged that Sgt. Usinski refused to provide him with written notice of the charges against him and that Sgt. Kuppel, as the hearing officer, did not allow him to call witnesses and was biased and partial. (Dkt. 1 at 19). "An inmate subject to a

disciplinary hearing is entitled to an impartial hearing officer ... [and] the hearing officer [must] not be so insufficiently impartial as to present a hazard of arbitrary decisionmaking." *Shell v. Brzezniak,* 365 F.Supp.2d 362, 377 (W.D.N.Y. 2005) (quotation omitted). The Court is not persuaded that dismissal of Plaintiff's due process claim against Sgts. Usinski and Kuppel is warranted at this time.

However, the Court agrees that none of the other individual ECHC Defendants are alleged to have had any personal involvement in the alleged due process violations. As a result, Plaintiff's Fourteenth Amendment claim is dismissed as to all the individual ECHC Defendants except Sgts. Usinski and Kuppel.

### D. Municipal Liability

 Plaintiff has also named Erie County as a defendant in this matter. "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior.*'" *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal "policy or custom" from which the alleged injury arose. *Monell v. Dep't of Social Svcs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe,* 351 Fed.Appx. 543, 545 (2d Cir.2009) (citing *Vives v. City of N.Y.,* 524 F.3d 346, 350 (2d Cir.2008)).

 Here, the only relevant policy identified by Plaintiff is ECHC's policy that prisoners with dietary restrictions may not purchase food items from the commissary. As discussed above, there is no constitutional right of access to a prison commissary. As a result, Plaintiff's *Monell* claim must be dismissed because he has failed to allege an underlying constitutional violation. *See Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) (*Monell* does not provide an independent separate cause of action against a municipality; rather, "it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation") (emphasis in original). In other words, Plaintiff's *Monell* claim cannot exist independently without an underlying constitutional violation related to a municipal policy or custom. Plaintiff's constitutional claims are dismissed as to Erie County.

### E. Qualified Immunity

 The ECHC Defendants make a cursory argument that they are entitled to qualified immunity with respect to Plaintiff's claims. (Dkt. 14 at 15–16). "Qualified immunity is an affirmative defense, on which the defendant officials bear the burden of proof." *Sudler v. City of N.Y.,* 689 F.3d 159, 174 (2d Cir.2012). The ECHC Defendants have made no real argument on this point. They have simply listed the elements of a qualified immunity defense and stated conclusorily that "the above elements are met." (Dkt. 14 at 16). At this stage of the proceedings, the ECHC Defendants have failed to establish that they are entitled to qualified immunity as a matter of law.

## IV. Plaintiff's Statutory Claims

Plaintiff's complaint also asserts claims based on Title II of the Americans with

Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"); Subsection 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"); and 28 C.F.R. § 35.105 (collectively the "statutory claims").

■ As a threshold matter, Plaintiff's claim that Defendants violated 28 C.F.R. § 35.105 must be dismissed. 28 C.F.R. § 35.105 is "a federal regulation requiring that public entities conduct self-evaluations of their policies to ensure that they are in compliance with the ADA." *Roe v. Johnson,* 334 F.Supp.2d 415, 417 (S.D.N.Y. 2004). It is "unclear in any event whether Plaintiff[ ][has] a private right of action to enforce the ... self-evaluation regulation...." *Scharff v. Cnty. of Nassau,* No. 10 CV 4208(DRH)(AKT), 2014 WL 2454639, at *14 n. 7 (E.D.N.Y. June 2, 2014). The First and Sixth Circuits have held that no such private cause of action exists (*see Iverson v. City of Boston,* 452 F.3d 94, 101 (1st Cir.2006); *Ability Ctr. of Greater Toledo v. City of Sandusky,* 385 F.3d 901, 914 (6th Cir.2004)), while the Tenth Circuit has reached a contrary holding (*Chaffin v. Kansas State Fair Bd.,* 348 F.3d 850, 856–60 (10th Cir.2003)). The Second Circuit has not addressed the issue, but has cited *Iverson* with approval in finding no private right of action to enforce a different regulation promulgated under the ADA. *See Abrahams v. MTA Long Island Bus,* 644 F.3d 110, 120 n. 7 (2d Cir.2011). It thus seems unlikely that the Second Circuit would recognize a private cause of action in this context. However, the Court need not decide the issue in this case because the complaint contains no factual allegations related to this claim. Plaintiff's conclusory allegation that Defendants have "failed to make a self evaluation of existing policies that discriminate against qualified individuals with a known disability" (Dkt. 1 at 13) is nothing more than a formulaic recitation of the requirements of 28 C.F.R. § 35.105 and is insuffi-

cient to raise Plaintiff's claim to the level of plausibility. Plaintiff's claim based on this federal regulation is dismissed. The Court considers Plaintiff's remaining statutory claims below.

### A. Plaintiff's Statutory Claims Against the Individual Defendants

■ The ECHC Defendants argue that Plaintiff cannot maintain either an ADA claim or a Rehabilitation Act claim against any of the individual defendants. (Dkt. 14 at 20). The Court agrees. "[U]nder both the ADA and Rehabilitation Act, individuals may not be sued in their individual or personal capacity." *Castro v. City of N.Y.,* 24 F.Supp.3d 250, 259 (E.D.N.Y.2014) (quotation omitted); *see also Carrasquillo v. City of N.Y.,* 324 F.Supp.2d 428, 441 (S.D.N.Y.2004) ("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities."); *Kearney v. N.Y.S.,* No. 11–CV–6033CJS, 2011 WL 344755, at *1 (W.D.N.Y. Jan. 31, 2011) ("Claims for monetary damages under § 1983 may only be brought against individuals based on their personal involvement, while claims under the ADA and The Rehabilitation Act may not generally be brought against individuals."). Plaintiff's claims under the ADA and the Rehabilitation Act are therefore dismissed as to the individual defendants.

### B. Plaintiff's Statutory Claims Against Erie County and Keefe Commissary

Plaintiff also asserts his statutory claims against Erie County and Keefe Commissary. "Although there are subtle differences between [the ADA and the Rehabilitation Act], the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities" and

"unless one of those subtle distinctions is pertinent to a particular case, [the Court] treat[s] claims under the two statutes identically." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir.2003). None of these distinctions are relevant here, and so the Court considers Plaintiff's ADA and Rehabilitation Act claims together.

 "Title II of the ADA and § 504 of the Rehabilitation Act apply to inmates in state prisons." *Hallett v. N.Y. State Dep't of Corr. Servs.*, 109 F.Supp.2d 190, 198 (S.D.N.Y.2000). "To prove a violation of Title II [of the ADA], a party must ... establish: (1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir.2013).

 In this case, Plaintiff claims that he was excluded from the commissary program at ECHC as a result of his diabetes, and that this amounted to discrimination on the basis of disability. Plaintiff's complaint fails to state a claim pursuant to either the ADA or the Rehabilitation Act.

As a threshold matter, the Court is not convinced that Plaintiff has adequately pled that he is disabled as defined in the ADA. Numerous federal courts have held that diabetes, even when accompanied by the use of medication and dietary restrictions, is not necessarily a disability under the ADA. *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223–24 (5th Cir. 2011) (collecting cases and finding no disability because "this case is closely analogous to those in which our sister circuits have concluded that modest dietary restrictions concomitant with an employee's diabetic condition do not amount to substantial limitations under the ADA"). Moreover, Plaintiff has not alleged that he

was excluded from the commissary program, only that he was restricted from purchasing certain items (namely food items). However, none of the Defendants have raised these arguments, and so the Court does not base its decision on these points.

Even assuming *arguendo* that Plaintiff is disabled under the ADA and that he was excluded from the commissary program, he has failed to allege facts plausibly supporting the inference that he was excluded on the basis of his disability. Plaintiff contends that ECHC maintains a policy that prisoners with dietary restrictions may not purchase food items from the commissary. The necessity of this policy is readily apparent—for example, if a prisoner with a severe allergy to nuts was free to purchase nut-containing food items from the commissary, it would compromise both institutional and inmate safety. The policy applies to all inmates who are on restricted diets, not only those whose dietary restrictions are the result of a disability.

As the ECHC Defendants argue, Plaintiff has not alleged that he requested a reasonable accommodation that would have permitted him to participate in the commissary program or that such an accommodation in fact existed. *See Harris v. Mills*, 572 F.3d 66, 74 (2d Cir.2009) (affirming dismissal of ADA claim in part because complaint did not allege how plaintiff's disabilities could be reasonably accommodated); *United Spinal Ass'n v. Bd. of Elections in City of N.Y.*, 882 F.Supp.2d 615, 626 (S.D.N.Y.2012), *aff'd sub nom. Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189 (2d Cir.2014) ("to demonstrate that individuals were deprived of an opportunity or benefit or discriminated against *by reason* of their disabilities, Plaintiff's must demonstrate that Defendants failed to undertake some feasible measure to improve accessibility"). It would be objectively unreasonable to

require ECHC to stock food items in the commissary that would be safe for all inmates with dietary restrictions. *See Farid v. Demars*, No. 9:06–CV–1545 TJM/GJD, 2009 WL 455450, at *4 (N.D.N.Y. Feb. 23, 2009) (dismissing ADA and Rehabilitation Act claims brought by diabetic inmate who wanted the commissary to stock special food items). Indeed, based on the allegations and attachments to Plaintiff's complaint, it appears that ECHC attempted to accommodate inmates with dietary restrictions by permitting them to purchase non-food items from the commissary. In short, Plaintiff has failed to allege that he requested a reasonable accommodation or that a reasonable accommodation existed that would have permitted him to purchase food items from the commissary. Under these circumstances, Plaintiff has failed to state a claim under either the ADA or the Rehabilitation Act.

## V. Failure to Exhaust

The ECHC Defendants argue that Plaintiff's claims should be dismissed because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e (the "PLRA"). Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step DOCS grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw v. Syed*, 686 F.Supp.2d 234, 236 (W.D.N.Y.2010) (citations omitted). "[F]ailure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [Plaintiff's] claims have not been exhausted." *Washington v. Chaboty*, No. 09 CIV. 9199(PGG), 2015 WL 1439348, at *7 (S.D.N.Y. Mar. 30, 2015).

Here, the ECHC Defendants have failed to meet their burden as to the claims the Court has determined may go forward. With respect to Plaintiff's Eighth Amendment medical indifference claim, Plaintiff has attached to his complaint a copy of a grievance in which he specifically states that "ECHC has failed to provide diabetics with an adequate diet...." (Dkt. 1 at 42). The ECHC Defendants have not shown that Plaintiff failed to appeal this grievance, and nothing on the face of Plaintiff's complaint demonstrates such a failure.

Moreover, Plaintiff has alleged that Defendants prohibited him from filing grievances and that on at least one occasion he was threatened with placement in the "box" if he filed a grievance. (Dkt. 1 at 15, 16, 34). The Second Circuit has explained that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable," and that this includes circumstances where threats against the plaintiff make it "such that remedies that may have been nominally available were not so in fact." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) [2]. Defendants have failed to address

**2.** Although the continued viability of other portions of the *Hemphill* decision have been called into question (*see Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir.2011)), the unavailability of administrative procedures remains a

Plaintiff's allegations regarding the unavailability of the grievance procedures or to explain how the Court could, at this preliminary stage, determine as a matter of law that Plaintiff's ability to grieve was not interfered with by Defendants. Dismissal on this ground is not warranted at this stage of the proceedings.

### CONCLUSION

For the reasons set forth above, the pending motions to dismiss (Dkt. 12 and 22) are denied as to Plaintiff's Eighth Amendment medical indifference claim against Nurse Practitioners Sharon Galbo and Janet Collesano, denied as to Plaintiff's Fourteenth Amendment due process claim against Sgts. Usinski and Kuppel, and granted in all other respects. The Clerk of the Court is directed to amend the caption of this case to reflect the dismissal of Defendants Sheriff T. Howard, Undersheriff Mark Wipperman, Superintendent T. Diina, First Deputy Superintendent M. Reardon, Chief Harris, Captain Hartman, Sergeant Diamond, Sergeant McAndrew, Sergeant John Doe, Deputy Sheriff John Doe, Deputy Sheriff Harvey, Deputy Brown, County of Erie, and Keefe Commissary Network, LLC. All remaining Defendants who have been served in this matter shall file an answer to the surviving claims within 20 days of entry of this Decision and Order.

SO ORDERED.

valid exception to the PLRA's exhaustion requirement.