RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0225-MR

JANICE HAMILTON                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NO. 20-CI-006304


LOUISVILLE & JEFFERSON
COUNTY METROPOLITAN SEWER
DISTRICT                                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

GOODWINE, JUDGE: Janice Hamilton ("Hamilton") appeals from the October 6, 2022 and January 30, 2023 judgments of the Jefferson Circuit Court. After careful review and consideration of the parties' oral arguments, we affirm.

## BACKGROUND

Hamilton began employment with the Louisville and Jefferson County Metropolitan Sewer District ("MSD") in 2011. She worked as a member of a field

crew doing maintenance, repairs, and construction.  She began as a Utility Trainee before advancing to the position of Utility Worker I and then to Utility Worker II.

On February 10, 2012, Hamilton injured her ankle on the job and subsequently filed a workers' compensation claim.  After being temporarily restricted from working, she returned to her position.  She was injured on the job for a second time on August 1, 2014.  She again filed a workers' compensation claim and she was again able to return to her position on the field crew.

In 2015, Hamilton applied for a position in the MSD dispatch department.  After failing the requisite typing test once, she passed it and was transferred on February 6, 2016.  She was supervised by Yvonne Austin ("Austin").  Hamilton admits she struggled with the duties of her new position, especially because the work required use of computers.  She acknowledges she did not meet the expectations of the position.  Her performance reviews showed that she needed additional attention and training, and her inability to perform her duties created additional work for other staff.  Her evaluations also show she reacted poorly to feedback and her behavior negatively impacted her peers.

Austin and Hamilton had a contentious working relationship.  Hamilton alleges various acts of harassment, including micromanagement and rude remarks from Austin.  In 2016, a few months after she began working for dispatch, Hamilton filed a human resources ("HR") complaint alleging Austin provided her

insufficient training and claimed Austin created a stressful work environment by criticizing her performance in front of other staff. Hamilton did not claim she was disabled or that the alleged harassment was based on a disability. HR investigated the allegations, and they were unsubstantiated.

In February 2018, Austin placed Hamilton on a 90-day performance improvement plan ("PIP"). The PIP detailed the skills and duties in which Hamilton needed to improve to meet the expectations for her position. Hamilton failed to complete the PIP. Her evaluations continued to show she had not improved and was rude to other staff. According to an evaluation completed after the PIP, she did not "possess the capabilities to function in her current position." Record ("R.") at 308.

On June 6, 2018, Austin instructed Hamilton to take her scheduled lunch break. Hamilton repeatedly refused to do so. According to witnesses and Hamilton's admission, in response to Austin's instruction, she yelled, "I'm sick of you." *Id.* at 319. The next day, Angela Basil ("Basil"), an MSD Employee Relations Administrator, met with Hamilton and gave her a one-day suspension without pay because her behavior violated MSD's rules of conduct. Hamilton alleged Austin's instruction for her to take her lunch break was harassment. HR determined Austin's instruction was reasonable and Hamilton should have

-3-

communicated with her supervisor in a respectful manner.  Austin was not disciplined for the incident.

In September 2018, Hamilton informed HR that she would need to move around during her shifts because she was at risk of developing cramps or blood clots.  Hamilton is diabetic though she did not mention her diagnosis on her request form.  On that form, her medical provider stated Hamilton experienced neuropathy which can be aggravated by "prolonged periods of sitting."  *Id.* at 327.  Her provider recommended she be allowed to walk around for five minutes every one to two hours.  *Id.* at 328.  Hamilton was permitted to take additional breaks as needed.

In October 2018, Hamilton filed a second HR complaint against Austin.  She alleged Austin followed her to the restroom and harassed her about taking too long.  She admits she was making a personal phone call from the restroom.  She again makes no mention of any alleged disability in her complaint.  HR investigated the incident and found it unsubstantiated.

In January 2019, Hamilton acknowledged she "dropped the ball" by failing to properly follow up on a request that led to significant sewage backup in a customer's yard.  *Id.* at 333.  She met with HR and was given a five-day suspension without pay for the error.  A week later, she applied for and received a leave of absence under the Family and Medical Leave Act ("FMLA") for an

"unspecified anxiety disorder." *Id.* at 341. She sought treatment at The Brook. Her provider recommended an "intensive outpatient treatment program." *Id.* In a letter, her provider recommended she transfer back to a job in the field. Hamilton was discharged from The Brook and cleared to return to work in June 2019. Neither Austin nor Basil were informed of the reason for Hamilton's leave of absence.

Thereafter, Hamilton requested an accommodation based on her provider's recommendation to "return to work out in the field." *Id.* at 343. Based on documentation from The Brook, MSD allowed Hamilton to transfer back to a field position. She began work as a Utility Trainee on July 13, 2019.[1] Hamilton continued to work in field positions with MSD until early 2021. In February 2021, she was injured again and filed a third workers' compensation claim. She did not return to work at MSD after this injury.

On October 30, 2020, while she was still employed by MSD, Hamilton filed a complaint in Jefferson Circuit Court alleging disability discrimination, hostile work environment, workers' compensation retaliation, and

---

[1] In this position, Hamilton was a member of the Laborers International Union of North America ("LIUNA"). Under the union's collective bargaining agreement's seniority rules, she was required to transfer back to a trainee position. After the 30-day probationary period, she progressed back to the position of Utility Worker II. The agreement also governed the way LIUNA members were able to change shifts based on seniority. R. at 346.

negligent infliction of emotional distress ("NIED"). Thereafter, MSD moved for summary judgment on Hamilton's claims.

In its October 6, 2022 judgment, the trial court granted summary judgment on all claims except the NIED claim. The court determined there remained genuine issues of material fact as to Hamilton's NIED claim. Thereafter, MSD again moved for summary judgment on Hamilton's remaining claim. On January 30, 2023, the court granted summary judgment. Relying on *Johnson v. Pennyrile Allied Community Services*, No. 5:20-CV-071-TBR, 2022 WL 1004873 (W.D. Ky. Apr. 4, 2022), the trial court held Hamilton's NIED claim was preempted by the Kentucky Civil Rights Act ("KCRA") because the claims were based on the same underlying facts.

This appeal followed.

## STANDARD OF REVIEW

The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Phoenix American Administrators, LLC v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023) (citation omitted).

## ANALYSIS

On appeal, Hamilton argues summary judgment should not have been granted on her claims because (1) she provided adequate evidence of workers' compensation retaliation; (2) she provided adequate evidence of disability discrimination; (3) she showed a pattern of severe and pervasive conduct to support her hostile work environment claim; and (4) NIED is a "stand alone claim."

First, Hamilton failed to establish a prima facie case of workers' compensation retaliation. "No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing" a workers' compensation claim. KRS[2] 342.197(1). In a claim for workers' compensation retaliation, a plaintiff must prove:

> (1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Dollar General Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. App. 2006) (citing *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d

---

[2] Kentucky Revised Statutes.

790, 803 (Ky. 2004)). It is uncontested that Hamilton engaged in protected activity by filing two workers' compensation claims in 2012 and 2014.[3]

As to the second element, Hamilton argues all employees of MSD had constructive knowledge of her workers' compensation claims. However, she did not first raise this argument before the trial court.[4] "An issue cannot be raised for the first time on appeal; the trial court must be given an opportunity to rule on a claim before it can be addressed by an appellate court." *Brooks v. Byrd*, 487 S.W.3d 913, 919 (Ky. App. 2016). On this basis, we will not consider the merits of Hamilton's constructive knowledge argument.

Hamilton further alleges Austin knew about her workers' compensation claims. A plaintiff must show the decision-makers who control decisions regarding the plaintiff's employment knew about the protected activity. *See Asbury University v. Powell*, 486 S.W.3d 246, 258 (Ky. 2016) (citation omitted). Hamilton alleges Austin knew of her workers' compensation claims because she knew Hamilton was injured and "reviewed daily reports indicating

---

[3] During oral arguments, the parties both stated Hamilton's workers' compensation claims were filed in 2014 and 2016. The record on appeal indicates Hamilton's injuries occurred in 2012 and 2014 but is less clear as to the precise dates on which her claims were filed. Our analysis is the same regardless of whether her last claim was filed in 2014 or 2016.

[4] In her brief, Hamilton does not state where and in what manner this, or any other argument, is preserved. Rules of Appellate Procedure ("RAP") 32(A)(4). Our review of the record indicates she did not raise this argument in her response to MSD's motion for summary judgment. R. at 473-97.

-8-

who was off work[.]" Appellant's Brief at 10.[5]  Being aware of Hamilton's injury does not prove Austin knew about her workers' compensation claims.  Similarly, Austin's review of absence reports does not prove she knew of the reason for each absence.  Moreover, Hamilton alleges only that Austin generally reviewed these reports, not that she specifically reviewed reports that included Hamilton's absences or that she had any knowledge of Hamilton's attendance records in the time preceding her transfer to the dispatch department.  Hamilton cites to nothing in the record showing any other decision-makers, including Basil, knew about her workers' compensation claims.[6]

Assuming, *in arguendo*, Hamilton sufficiently proved Austin's knowledge, she failed to prove a causal connection between that knowledge and the alleged employment actions.  Hamilton claims she was subject to employment actions including two suspensions, poor performance evaluations, her PIP, and "severe emotional distress and abuse." *Id.* at 11.  Within her argument, she does not specify what constituted the alleged severe emotional distress and abuse. Without sufficient development of her argument, we cannot find this constitutes an

---

[5] Hamilton asserts this is direct evidence of Austin's knowledge.  However, MSD correctly characterizes this as circumstantial evidence.  *See Charalambakis v. Asbury University*, 488 S.W.3d 568, 577 (Ky. 2016) (citation omitted) ("direct evidence . . . does not require a factfinder to draw any inferences").

[6] Basil began working for MSD in 2015.  She was not employed by MSD at the time Hamilton filed her workers' compensation claims.

employment action under *Upchurch*, 214 S.W.3d at 915 (citation omitted). Additionally, neither poor performance evaluations nor a PIP amount to adverse employment actions without proof that they adversely impacted the employee's wages or salary. *See Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007) (citation omitted); *see also Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir. 2002). Therefore, only Hamilton's two suspensions qualify as adverse employment actions.

As is the case with most cases of alleged retaliation, there is no "smoking gun" showing Austin reported Hamilton's conduct to HR or that Basil suspended her because of her workers' compensation claims. *See Powell*, 486 S.W.3d at 258. This means Hamilton must establish causation by circumstantial evidence. *Id.* (citation omitted). She must prove: "(1) the decision-maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action." *Id.* (citation omitted).

Hamilton's claim fails on both elements. As explained above, Basil is the decision-maker who suspended Hamilton. Hamilton cites to nothing in the record from which this Court could reasonably infer Basil had any knowledge of Hamilton's workers' compensation claims. Furthermore, while she attempts to

show Austin, as the person who reported her to HR before both suspensions, knew of her claims, the evidence shows only that Austin likely knew Hamilton had been injured before transferring to the dispatch department. Additionally, there was no close temporal proximity between Hamilton's workers' compensation claims and her suspensions. She filed her claims in 2012 and 2014 and was not suspended until 2018 and 2019. This is insufficient to prove causation.

Because Hamilton failed to prove a prima facie claim of workers' compensation retaliation, summary judgment was appropriate.

Second, Hamilton's claim of disability discrimination fails as a matter of law. It is unlawful for an employer to "discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . because the person is a qualified individual with a disability[.]" KRS 344.040(1)(a). To establish a prima facie claim of disability discrimination, a plaintiff must prove:

> (1) that she had a disability within the meaning of KRS 344.010(4); (2) that, despite the disability, she was otherwise qualified to perform the essential functions of the job in question, either with or without reasonable accommodation; (3) that she suffered an adverse employment action because of her disability; and (4) that she was replaced by a non-disabled person *or* that similarly situated non-disabled employees were treated more favorably.

*Larison v. Home of the Innocents*, 551 S.W.3d 36, 41 (Ky. App. 2018) (citation omitted).

> Under the KCRA, "disability" is defined as
>
> (a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;
>
> (b) A record of such an impairment; or
>
> (c) Being regarded as having such an impairment.

KRS 344.010(4). Major life activities include, but are not limited to, "walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Turner v. Norton Healthcare, Inc.*, 681 S.W.3d 26, 33 (Ky. 2023) (citation omitted). "Whether the plaintiff has an impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 707 (Ky. App. 2004).

Here, Hamilton alleges her disabilities include diabetes, generalized anxiety, and the leg and ankle injuries she sustained on the job. First, she claims she is disabled because her injuries required surgery. However, an injury necessitating surgery is not determinative of disability. In fact, generally, where treatment has remedied an impairment, it is not substantially limiting. *Turner*, 681 S.W.3d at 33 (citation omitted). Hamilton cites to nothing which proves her prior

injuries had anything more than short-term, temporary effects. *See Larison*, 551 S.W.3d at 43 (citation omitted). Without proof that her injuries substantially limit any major life activity, they do not qualify as a disability under KRS 344.010(4)(a).

Hamilton also has not shown that her diabetes substantially limits a major life activity. It is difficult to establish a claim for disability discrimination based on a diabetes diagnosis. *Bragdon v. Faneuil, Inc.*, 2022 WL 507430, at *3 (E.D. Ky. Feb. 18, 2022).[7] Although an individual's diabetes can be so severe that it substantially limits their major life activities, "[n]umerous federal courts have held that diabetes, even when accompanied by the use of medication and dietary restrictions, is not necessarily a disability[.]" *Sanders v. Bemis Company, Inc.*, No. CV 5:21-323-DCR, 2017 WL 405920, *4 (E.D. Ky. Jan. 20, 2017) (quoting *Montalvo v. Lamy*, 139 F.Supp.3d 597, 611 (W.D. N.Y. 2015)).[8] Hamilton alleges her condition prevents her from sitting for long periods of time and requires additional breaks during the workday.[9] Her medical provider indicated her diabetes would not prevent her from performing any of her job duties. R. at 327.

---

[7] We cite to this unpublished opinion as persuasive, not binding, authority. *See* RAP 41(B).

[8] *See supra* note 7.

[9] Hamilton also claims her diabetes requires her to take additional restroom breaks. However, neither she nor her medical provider mentioned this in her request for accommodation. R. at 325-28.

Therefore, Hamilton's diabetes did not substantially limit Hamilton's ability to work and, therefore, is not a disability under KRS 344.010(4)(a).[10]

Finally, Hamilton has not shown her diagnosis of generalized anxiety substantially limits any major life activity. During her FMLA leave, she sought treatment and, based on the recommendation of her mental health provider, was able to return to work and was transferred from the dispatch department back into the field. After her release from treatment, she has continued with regular visits with her provider. She vaguely alleges her anxiety is "debilitating," but does not specify what life activities it substantially limits. Without specific proof of substantial limitation, we cannot find Hamilton has proven her anxiety is a disability under KRS 344.010(4)(a).

Furthermore, Hamilton has not proven she was regarded as disabled under KRS 344.010(4)(c). It is "extraordinarily difficult" to prove a disability discrimination claim under this subsection because it depends almost exclusively on the employer's subjective state of mind. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001). It is not enough for a plaintiff to prove only that her employer was aware of her symptoms or condition. *Baum v. Metro Restoration Services, Inc.*, 240 F. Supp. 3d 684, 693 (W.D. Ky. 2017) (citation omitted).

---

[10] *See DePrisco v. Delta Air Lines, Inc.*, 90 F.App'x 790, 794-95 (6th Cir. 2004) (holding a plaintiff's need to briefly walk around every hour is not a substantial limitation on her ability to work).

Instead, she must show her employer thought she was disabled and "that [her] disability would prevent [her] from performing a broad class of jobs." *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 594 (Ky. 2003) (citation omitted). Herein, at most, Hamilton showed Austin may have been aware of the injury that led to her transfer to the dispatch department, knew of her diabetes diagnosis, and knew Hamilton took a leave of absence but did not know she sought treatment for anxiety. Even if Austin had this knowledge, Hamilton cites to no evidence proving she regarded her as unable to perform her job responsibilities because of an impairment.

Because Hamilton failed to establish herself as disabled under the KCRA, her claim for disability discrimination fails.

Next, Hamilton's hostile work environment claim fails on the same grounds. Under the Americans with Disabilities Act ("ADA"), to establish a claim for hostile work environment, a plaintiff must prove "(1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Trepka v. Board of Education*, 28 F. App'x

455, 461 (6th Cir. 2002) (citations omitted).[11] Hamilton's failure to prove she is disabled under KRS 344.010(4) is fatal to her hostile work environment claim.

Finally, Hamilton's NIED claim is preempted by the KCRA. This Court has previously held claims of intentional infliction of emotional distress ("IIED") are subsumed by KCRA claims based on the same facts. *Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 239 (Ky. App. 2001), *superseded on other grounds by Owen v. University of Kentucky*, 486 S.W.3d 266 (Ky. 2016). The purpose of the KCRA is "[t]o safeguard all individuals within the state from discrimination . . . because of the person's status as a qualified individual with a disability . . . thereby to protect their interest in personal dignity and freedom from humiliation[.]" KRS 344.020(1)(b). This Court has interpreted the statute to allow plaintiffs to seek damages for "humiliation and personal indignity." *Wilson*, 75 S.W.3d at 239 (citation omitted). Claims of IIED similarly allow plaintiffs to seek damages for intentional emotional distress. *Id.* (citation omitted). "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Id.* (citation omitted). Because the same facts form the basis for both Hamilton's NIED and KCRA claims, the former is subsumed by the latter. *See*

---

[11] We rely on the ADA standard because, in relevant part, the purpose of the KCRA is "[t]o provide for execution within the state of the policies embodied" in the ADA. KRS 344.020(1)(a).

*Johnson*, 2022 WL 1004873, at *17.  Therefore, summary judgment was appropriate.

## **CONCLUSION**

Based on the foregoing, the October 6, 2022 and January 30, 2023 judgments of the Jefferson Circuit Court are affirmed.

ALL CONCUR.


BRIEF AND ORAL ARGUMENT
FOR APPELLANT:

Marilyn Shrewsbury
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Alina Klimkina
Donald C. Morgan
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Alina Klimkina
Louisville, Kentucky